1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

9
10
11
12
13

| | |
|---|---|
| FRANKLIN FIGUEROA | Case No. 12CV416-H (BLM) |
| Petitioner, | **REPORT AND RECOMMENDATION FOR ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| D. BERKEBILE, Warden, | |
| Defendant. | |

14

15    This Report and Recommendation is submitted to United States District Court Judge

16   Marilyn L. Huff pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(d) and HC.2 of the

17   United States District Court for the Southern District of California.  On February 15, 2012,

18   Petitioner Franklin A. Figueroa, a state prisoner who is proceeding *pro se* and *in forma*

19   *pauperis* commenced these habeas corpus proceedings pursuant to 28 U.S.C. §2254.  ECF

20   No. 1 ("Pet.").  Petitioner challenges  his conviction of second degree murder with gang and

21   prior felony enhancements.  Id. at 2.  Respondent filed an answer on May 22, 2012.  ECF

22   No. 9 ("Answer").  Petitioner did not file a traverse.

23    This Court has considered the Petition, Answer, and all supporting documents filed

24   by the parties.  For the reasons set forth below, this Court **RECOMMENDS** that Petitioner's

25   Petition for Writ of Habeas Corpus be **DENIED**.

26
27
28

1

## FACTUAL AND PROCEDURAL BACKGROUND

2       The following facts are taken from the California Court of Appeal's opinion in People

3 v. Figueroa, Appeal No. D05550, (Cal. Ct. of App. Nov. 19, 2010).  Lodgment 5.  This Court

4 presumes the state court's factual determination to be correct absent clear and convincing

5 evidence to the contrary. 28 U.S.C § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340

6 (2003); see also Parke v. Raley, 506 U.S. 20, 35 (1992) (holding findings of historical fact,

7 including inferences properly drawn from such facts, are entitled to statutory presumption

8 of correctness).

9

10     In the early morning hours of October 2, 2004, Antonio Rosales, Jr., was killed during a fight that occurred at a driveway across the street from his residence on Milbrae Street in San Diego. He died from blunt force injuries to his head.

11

12 Victim Rosales was a member of the Logan gang, and the assailants were members of the Van Dyke Krew (VDK) gang. There were four VDK gang members (including defendant) involved in the fight. Two of them, Genri Hernandez and Abel Jimenez, pleaded guilty to voluntary manslaughter and testified on behalf of the prosecution. They identified defendant and Rogelio Valadez as among the persons who assaulted Rosales. Julio Martinez, who associated with VDK gang members and who witnessed the fight from inside a car, testified on behalf of the prosecution upon a grant of immunity. Rosales's friend, Ricardo Anaya, who participated in the fight, also testified for the prosecution.

13

14

15

16 The prosecution charged defendant with first degree murder, with enhancements for personal use of a deadly weapon and committing a crime to benefit a gang. During trial, the court granted the prosecution's motion to dismiss the personal weapon use allegation. The jury acquitted defendant of first degree murder, and found him guilty of second degree murder. It also found true the gang enhancement allegation.

17

18

19

20 VDK members Hernandez and Jimenez, VDK associate Martinez, and Rosales's friend (Anaya) described the events surrounding the fight.FN1 In the hours before the fight, Hernandez, Jimenez, and Martinez, plus defendant and Valadez, were together drinking alcohol and smoking marijuana. Another man who had joined the group (Hugo Alvarez) told them that he knew where to get some marijuana, and invited them to go with him. The men left in two vehicles and drove to Milbrae Street. Hernandez drove his gray Oldsmobile, with Valadez and Jimenez as passengers. Defendant drove Alvarez's white Ford Focus, with Alvarez and Martinez as passengers. Defendant parked the white car by a house, and Hernandez parked his car on the next block. Alvarez got out of the white car and went to a house to get marijuana. While the men were waiting for Alvarez's return, Valadez got out of the gray car and started "tagging" graffiti. Valadez wrote the words "VDK First" on a fire hydrant, which was a reference to the VDK gang and Valadez's moniker "First."

21

22

23

24

25

26

27     FN1. Hernandez's testimony, provided during a conditional examination,

28

2                                                   12cv416-H(BLM)

was read to the jury. Hernandez was examined prior to trial because it was expected that he would be deported by the time of trial.

Meanwhile, Anaya and Rosales arrived at Milbrae Street in Anaya's car. When they arrived, Anaya saw two or three men on the other side of the street standing behind a white car.FN2 While Anaya was parking the car in front of Rosales's home, Rosales got out of the car and walked towards where the men were standing.

> FN2. By the time of trial Anaya did not recall the color of the car that the men were standing behind. However, when interviewed by the police a couple of hours after the fight he described the vehicle as a white car.

A fight ensued, but none of the witnesses saw exactly how it started. Anaya testified that Rosales did not approach the men in an aggressive fashion, and Anaya thought Rosales knew them. Martinez (who stayed in the white car during the fight) testified that he heard people screaming and cussing, saying " 'what's up mother-fucker?' " as if they wanted to fight, and he then saw defendant "running" out of the car. Martinez testified he could not see much of the fight because he was hit in the eye by someone through the car window and it was dark. Martinez did not know who punched him, but he thought it was "gang-related." Martinez saw people with baseball bats near the white car, and thought he saw Jimenez with a bat.

At the start of the fight, Anaya noticed that Rosales had a man down on the ground. Anaya started fighting with one of the men by the white car, and chased one of the men when he started running down the street. However, when more men from another car joined the fight and started hitting Anaya, Anaya jumped a fence into a yard. As Anaya ran away, Rosales was still standing and he was not bleeding from the head. Anaya saw a man going towards Rosales with a bat.

Jimenez testified that Valadez (who had been "tagging" adjacent to the gray car) knocked on the window of the gray car, said "somebody was fighting down the street," and then ran towards the fight. Jimenez and Hernandez each grabbed a bat from the trunk of Hernandez's car and also ran towards the fight. Both Jimenez and Hernandez testified that they went to Milbrae Street to get marijuana, not to get into a fight, but they stated that when a gang member is involved in a fight, other gang members are expected to help, and if they do not they would probably be beaten.

Jimenez testified that as they ran towards the area of the fight, defendant was running towards them and Rosales was running away. When defendant saw his friends coming, he "turned around." Defendant, Jimenez, and Valadez then chased Rosales.FN3 Jimenez hit Rosales in the back with the bat and Rosales fell. Jimenez was about to hit Rosales again, but defendant took the bat from him. Valadez was kicking Rosales in his head or upper body, and defendant was hitting him with the bat on his upper body.FN4 At this point Jimenez went into the white car to look for the car keys so they could get away. He was surprised to see Martinez (who appeared to be crying) in the car because Martinez should have been outside helping with the fight.

> FN3. Jimenez testified he did not know Rosales, and it appears

12cv416-H(BLM)

Hernandez did not know him either.

> FN4. When the prosecutor asked Jimenez if defendant was hitting Rosales's head with the bat, Jimenez answered, "Most likely."

Hernandez testified that as he ran towards the fight, he saw Valadez and defendant fighting with Rosales. Defendant was punching Rosales with his fists while Rosales was on the ground. Hernandez chased another man (apparently Anaya) until Anaya jumped a fence and went into a backyard. At this point, Hernandez's view of the fight was obscured by the white car. However, he could see that Valadez and defendant were still fighting with Rosales. Valadez was kicking and punching Rosales, but Hernandez could not see what defendant was doing.

Anaya returned to the street and threw some beer bottles that he found in the yard where he had fled. The assailants started running away and left the scene in the two cars. When Anaya went to Rosales, he was laying on the ground bleeding from his head. Anaya told a neighbor to call 911.

Defendant left the scene in the white car, accompanied by Martinez. While in the car with defendant, Martinez stated, " 'Man, I didn't even help you.' " Martinez explained that he said this because defendant was "getting jumped" and he was supposed to help him because he was "hanging around" with him. Defendant, who appeared angry, told Martinez to calm down and "shut up."

The men drove the two cars to an alley. Hernandez and Martinez testified that defendant and Jimenez wiped the white car with a rag to remove fingerprints. Jimenez then drove the white car to his home so he could return the car to Alvarez.FN5 Before he could contact Alvarez, the police arrived and seized the white car. The authorities found defendant's fingerprints on the white car.

> FN5. Alvarez (who was Jimenez's neighbor) had been left at the scene of the fight.

After the fight, Hernandez and Jimenez noticed blood on Valadez's shoes. Hernandez testified he did not remember seeing any blood on defendant's clothes. Hernandez and Jimenez recounted various statements made by defendant after they left the scene of the fight. Defendant told them he hit the victim "hard" and stated the victim was bleeding "bad" from his head. Defendant said they should stay quiet and not say anything about the fight; if they talked it would be "snitching"; and there "could be trouble" (like a beating or stabbing) for anyone who talked about the fight. About one or two weeks after the fight, defendant acknowledged to Hernandez that he grabbed the bat from Jimenez. Defendant also stated that detectives had already talked to him and asked him what had happened; if he found out "who was telling on him" he was going to "do something about it," like beat or stab that person.

A gang expert testified regarding the primary activities of the VDK gang, including committing assaults with deadly weapons. The expert stated that Rosales's homicide occurred in territory claimed by the Shelltown gang. The expert opined that the killing of Rosales benefited the VDK gang because it enhanced the gang's status and instilled fear and intimidation in the community so that people would not talk to the police.

The jury convicted defendant of second degree murder with a true finding that he committed the crime to benefit a gang. He was sentenced to 15 years to life for the murder, plus a determinate term of 10 years for two serious felony prior convictions.FN6

> FN6. No additional term was imposed for the gang enhancement because of the life term applicable to second degree murder. (See *People v. Lopez* (2005) 34 Cal.4th 1002.).

Lodgment 5 at 2-7.

In July 2008, the People of the State of California filed an indictment against Petitioner for first degree murder with enhancements for committing the crime with a deadly weapon and to benefit a criminal street gang. Lodgment 1 at 1-2. The court dismissed the deadly weapon enhancement. Id. at 315. The jury found Petitioner guilty of second degree murder. Id. at 310. They also found true the allegation that Petitioner committed second degree murder for the benefit of a criminal street gang within the meaning of Penal Code Section 186.22(b)(1). Id. On July 20, 2009, the trial judge sentenced Petitioner to twenty-five years to life. Id. at 315.

Petitioner appealed his conviction, arguing that the court erred in denying his request to discharge his retained counsel, to represent himself, and to continue the case. Lodgment 4 at 1-6. He also argued the jury was not properly instructed on accomplice testimony and contrived self defense. Id. at 6-11. Finally, he argued there was insufficient evidence to support the gang enhancement conviction. Id. at 11-12. On November 19, 2010, the California Court of Appeals filed an opinion affirming the judgment of the trial court. Lodgment 5.

On December 22, 2010, Petitioner filed a petition for review in the California Supreme Court reasserting the same six claims. Lodgment 6. On February 23, 2011, the California Supreme Court summarily denied the petition for review without citation or authority. Lodgment 7.

## **SCOPE OF REVIEW**

Title 28, United States Code, § 2254(a), sets forth the following scope of review for

12cv416-H(BLM)

federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a) (West 2012).

The Petition was filed after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.  Under 28 U.S.C. § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (West 2012).  In making this determination, a court may consider a lower court's analysis.  Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (authorizing a reviewing court to look through to the last reasoned state court decision).  Summary denials are presumed to constitute adjudications on the merits unless "there is reason to think some other explanation for the state court's decision is more likely."  Harrington v. Richter, 131 S.Ct. 770, 784-785 (2011).

A state court's decision is "contrary to" clearly established federal law if the state court: (1) "applies a rule that contradicts the governing law set forth in [Supreme Court] cases"; or (2) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

A state court's decision is an "unreasonable application" of clearly established federal law where the state court "'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413). "[A] federal habeas court may not issue [a] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." Id. at 75-76 (citations and internal quotation marks omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.

If the state court provided no explanation of its reasoning, "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." Harrington, 131 S.Ct. at 786. In other words, a federal court may not grant habeas relief if any fairminded jurist could find the state court's ruling consistent with relevant Supreme Court precedent.

Finally, habeas relief also is available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2) (West 2012); Wood v. Allen, 130 S.Ct. 841, 845 (2010). A state court's decision will not be overturned on factual grounds unless this Court finds that the state court's factual determinations were objectively unreasonable in light of the evidence presented in state court. See Miller-El, 537 U.S. at 340 (2003); see also Rice v. Collins, 546 U.S. 333, 341-42 (2006) (the fact that "[r]easonable minds reviewing the record might disagree" does not render a decision objectively unreasonable). This Court will presume that the state court's

7

factual findings are correct, and Petitioner may overcome that presumption only by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1); Schriro v. Landrigan, 550 U.S. 465, 473-474 (2007).

## DISCUSSION

Petitioner raises six grounds for relief in his Petition.  Pet.  First, he contends that his constitutional rights to counsel and a fair trial were violated when the trial court denied his request to discharge retained counsel prior to the beginning of trial.  Id.  Next, he argues that his Sixth Amendment rights were violated when the trial court denied his request to represent himself on the day of trial.  Id.  Third, he contends that his due process rights were violated when he was denied a continuance to review reports given to him by his attorney prior to trial.  Id.  He also contends his due process rights were violated because the jury was improperly instructed about accomplice testimony and contrived self-defense. Id.  Finally, he claims the evidence was insufficient to prove he committed the crime to benefit a street gang pursuant to Penal Code Section 186.22 (b)(1).  Id.

## I.    Right to Counsel

Petitioner argues that his constitutional rights to counsel and a fair trial were violated by the trial court's refusal to allow him to discharge his counsel.  Pet. at 4.  In support, Petitioner states that despite knowing that his attorney was retained, the court denied Petitioner's request to discharge his attorney and left Petitioner in a position where he was forced to pay "for the representation of an attorney that he did not want."  Id. at 8. According to Petitioner, this "violated [his] constitutional rights to retained counsel of choice and a fair trial."  Id.  Petitioner further contends that he had good cause for his request because his attorney gave him "hundreds of pages of police reports to review just prior to trial starting" and Petitioner believed that the content of the papers differed from counsel's earlier representations.  Id.  Finally, Petitioner argues that any delay resulting from the discharge of his attorney "would not have substantially disrupted the court process" and that any "prejudice to [P]etitioner would have been insignificant had he been allowed to

8

discharge his attorney [because] [h]e could have hired someone else or represented himself and accepted defense counsel's offer to serve as stand-by counsel." Id.

Respondent contends that Petitioner's claim should be denied because the trial court's decision was "not contrary to, nor an unreasonable application of United States Supreme Court precedent." Answer at 22. Additionally, Respondent notes that Petitioner's request was untimely because it was "made on the day of trial and simply because [Petitioner] disagreed with counsel's decisions." Id. Finally, Respondent contends that because "fair minded jurists could disagree on the correctness of the state court's decision," the state court's decision that Petitioner's claim lacks merit precludes federal habeas relief. Id.

On the day that trial was scheduled to begin, Petitioner and his retained counsel, George Siddell, informed the court that Petitioner wished to terminate Mr. Siddell's services. Lodgment 8 at 251. The trial court noted that when there is a conflict between an attorney and Defendant, the Defendant "has a right to relieve his retained attorney and have the court appoint a new one," but that the right is not absolute and the request can be rejected "if it is not made in a timely fashion or would disrupt the orderly administration of justice or would cause undue prejudice to the Defendant." Id. at 253. The court emphasized that there is a different standard for retained attorneys versus appointed attorneys and asked Petitioner about the problems he was having with his lawyer. Id. Petitioner replied that he received a large number of documents from his attorney shortly before trial was set to begin and that the documents did not appear to say what his attorney had told him they said. Id. at 254. In response, Mr. Siddell stated that he had reviewed approximately 500 pages of police reports with Petitioner at the MCC Facility where he was housed and had discussed the contents of those papers with Petitioner. Id. at 254-255. The court denied the request finding it to be untimely. Id. at 255.

Petitioner presented his first claim to the California Supreme Court in a petition for review. Lodgment 6. The petition for review was summarily denied without a statement of reasoning or citation of authority. Lodgment 7. Petitioner presented this claim to the

12cv416-H(BLM)

appellate court in the same manner as it was presented to the state supreme court. Lodgment 2 at 9. The appellate court denied the claim in a reasoned opinion. Lodgment 5. The Court will therefore look through the silent denial by the state supreme court to the appellate court opinion. Ylst, 501 U.S. at 804. The appellate court stated:

> A criminal defendant has the right to discharge his or her retained attorney without cause. (*People v. Ortiz* (1990) 51 Cal .3d 975, 983.) However, the right is not absolute; the trial court has discretion to "deny such a motion if discharge will result in 'significant prejudice' to the defendant [citations], or if it is not timely, i.e., if it will result in 'disruption of the orderly processes of justice' [citations]." ( Ibid.) The court "should 'balance the defendant's interest in new counsel against the disruption, if any, flowing from the substitution.' " (*People v. Keshishian* (2008) 162 Cal.App.4th 425, 429.) The court should exercise its discretion reasonably, considering the state's interest in orderly and expeditious prosecutions, but refraining from a " 'myopic insistence upon expeditiousness in the face of a justifiable request for delay....' " (*People v. Ortiz*, *supra*, 51 Cal.3d at p. 984.)
>
> The trial court reasonably exercised its discretion to deny defendant's motion to discharge his retained counsel. The request was untimely. It was made on the day trial was set to start in a case involving a crime committed over four years earlier, and in which charges had been filed six months earlier. Defendant's attorney had been representing him for five months. His counsel had already cross-examined a key prosecution witness during a conditional examination; had reviewed the grand jury transcripts containing testimony of numerous prosecution witnesses; and was prepared to argue in limine motions. There was no new attorney prepared to step into the case, and a substantial continuance would have been required to permit a new attorney to prepare for trial. A continuance would have required witness rescheduling, which could be particularly problematic because of the potential for recalcitrant witnesses in a case involving a gang allegation, and because at least one witness was in custody.
>
> Initially, defendant stated he was dissatisfied because his counsel was making him do things he did not want to do; however, he provided no details concerning what he meant by this and he did not repeat this complaint during the lengthy discussion with the court. His complaints focused on the fact that he had recently received numerous documents about the case; he thought his counsel was not accurately describing their contents; and he wanted more time to review them. The trial court could reasonably reject these concerns by crediting defense counsel's claims that he had reviewed the material in the documents with defendant and defendant was accurately apprised of the state of the evidence. Although defendant was not required to show a reason for discharging his retained attorney, the absence of any persuasive reason supports the reasonableness of the court's conclusion that defendant's untimely request did not warrant a delay in the trial. (*See People v. Keshishian*, *supra*, 162 Cal.App.4th at p. 429 [absent good cause showing, court acts within its discretion to deny last-minute motion for continuance to secure new attorney to replace experienced and fully prepared retained counsel]; *People v. Turner* (1992) 7 Cal.App.4th 913, 919.)

12cv416-H(BLM)

Defendant argues that his request to discharge his retained counsel was not untimely because he made the request as soon as he discovered the problem with the late provision of the documents. Nevertheless, the request was untimely in the sense that trial was set to start. Further, this is not a case where a defendant discovered a problem with his retained counsel on the eve of trial that created a likelihood of affecting the fairness of the trial. (See, e.g., *People v. Lara* (2001) 86 Cal.App.4th 139, 162–163 [on first day of trial defendant requested to discharge retained counsel because of counsel's failure to consult with him and failure to interview witnesses].) The trial court was entitled to credit defense counsel's claim that defendant was apprised of the information in the documents. Also, the record shows that witness testimony did not commence until four days (including a Friday when there were no proceedings and a weekend) after defendant requested time to review the documents; thus defendant was afforded an opportunity to review the materials before the prosecution called the first witness against him. FN9 The record does not suggest that defense counsel was derelict in his duties to ensure defendant was given the information necessary to assist in his defense.

> FN9. Defendant's request for more time to review the documents was denied on Wednesday afternoon; in limine motions were conducted that same afternoon; jury selection was completed on Thursday; there were no proceedings on Friday; and the first witness was called on Monday.

Because the request to discharge counsel was made on the date set for trial and there was no convincing showing of a need for new counsel, the trial court reasonably exercised its discretion in denying the request.

Lodgment 5 at 12-15.

Petitioner is not entitled to federal habeas relief on this claim. In addition to requiring that an accused have "'counsel acting in the role of an advocate,'" the Sixth Amendment also "comprehends a right to [] defend with retained counsel of one's own choice." United States v. Cronic, 466 U.S. 648, 656 (1984), citing Anders v. California, 386 U.S. 738, 743 (1967); and Mack v. Hernandez, 2010 WL 2487613, *5 (S.D. Cal. May 6, 2010). Whereas a request to replace appointed counsel focuses on the adequacy of the provided representation or the presence of serious conflict, a defendant may replace retained counsel without cause. Id. This right, however, is not absolute and "[t]he Supreme Court has 'recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness … and against the demands of its calendar.'" Yokely v. Hedgepeth, 801 F. Supp. 2d 925, 948 (C.D. Cal. 2011) (quoting United States v. Gonzalez–Lopez, 548 U.S. 140, 152 (2006) (citing

Wheat v. United States, 486 U.S. 153, 159–60 (1988)).  Accordingly, "[w]here substitution would result in delay, the defendant may replace existing counsel with retained counsel, but, consistent with her right to effective assistance of counsel, may do so only upon a showing of good cause."   United States v. Rivera–Corona, 618 F.3d 976, 984-985 (9th Cir. 2010). A change in counsel of choice will not be permitted where "the substitution would cause significant delay or inefficiency." Yokely, 801 F. Supp. at 948 (quoting Rivera-Corona, 618 F.3d at 979).  "The Ninth Circuit has identified three factors a court should consider when deciding whether to permit a substitution of retained counsel: (1) whether the defendant had already retained new counsel; (2) whether current counsel was prepared and competent to proceed forward; and (3) the timing of defendant's request to continue." Yokely, 801 F. Supp. 2d at 948 (citing Miller v. Blacketter, 525 F.3d 890, 896-98 (9th Cir. 2008) cert. denied, 555 U.S. 1107 (2009) (denying a habeas petition alleging violation of the right to counsel where: (1) the petitioner requested the continuance the morning that trial was scheduled to begin; (2) the petitioner had not yet retained a lawyer; and (3) his appointed lawyer was prepared to represent him)).

Here, all three factors support the conclusion that the trial court's decision was not contrary to nor an unreasonable application of United States Supreme Court precedent. Petitioner had not retained new counsel at the time of his request to substitute counsel and Mr. Siddell was prepared and competent to proceed forward.  Lodgment 8 at 252.    In addition, Petitioner made his request on the day trial was set to begin and the court noted that Petitioner's request was "not timely, and it would disrupt the orderly administration of justice." Id. at 255.  This finding is in accordance with previous cases.  See McDonald v. Haws, 2011 WL 768130, *45 (S.D. Cal. Feb. 8, 2011) (holding that a request to substitute counsel made one week before trial was untimely); see also Sahibi v. Adams, 2009 WL 393135, *6 (C.D. Cal. Feb. 12, 2009) (finding that the trial court's denial of Petitioner's request for a 60 day continuance to permit the substitution of counsel on the eve of trial was not a violation of Petitioner's right to counsel or due process); Houston v. Schomig, 533 F.3d

12cv416-H(BLM)

1076, 1079 (9th Cir. 2008) (holding that the trial court acted within its discretion when it denied defendant's motion four days before trial to substitute retained counsel on the sole basis that defendant thought that trial counsel was unprepared); and Miller, 525 F.3d at 896-98 (habeas petitioner's right to counsel was not violated when he moved for a continuance on the eve of trial, had not yet retained counsel, and appointed counsel was ready to proceed).

Moreover, Petitioner has not identified and the record does not show any evidence that his rights were violated when the trial judge ordered Mr. Siddell to continue as Petitioner's counsel.   After the trial judge's ruling on Petitioner's request to substitute counsel, Mr. Siddell continued to communicate with and advocate for Petitioner.  Specifically, even after the ruling, Mr. Siddell successfully argued that the fact that the victim in this case was high on methamphetamine at the time of the confrontation and his death should be admissible during the trial [lodgment 8 at 269-270], argued that gang evidence should not be deemed admissible albeit unsuccessfully [id. at 356-360], presented an opening argument [id. at 453], cross examined numerous witnesses, evaluated whether or not Petitioner should testify in his own defense, ultimately concluding that it was not in Petitioner's best interest after communicating with Petitioner about the issue [id. at 1076-1077], provided input on the appropriateness of various jury instructions [id. at 1151-1155], and presented a closing argument to the jury [id. at 1215-1227].   This is not a case where Petitioner has been denied his Sixth Amendment right to counsel.   See Daniels v. Woodford, 428 F.3d 1181, 1197-98 (9th Cir. 2005) (finding constructive denial of counsel where defendant's understandable distrust under extreme circumstances led to "complete breakdown" in communication with counsel) (citing United States v. Nguyen, 262 F.3d 998, 1003-04 (9th Cir. 2001) (finding a constructive denial of counsel and stating that "[t]here is no question in this case that there was a complete breakdown in the attorney-client relationship.  By the time of trial, the defense attorney had acknowledged to the Court that Nguyen 'just won't talk to me anymore.' In light of the conflict, Nguyen could not confer with his counsel about

13

trial strategy or additional evidence, or even receive explanations of the proceedings.  In essence, he was 'left to fend for himself.'") and <u>Brown v. Craven</u>, 424 F.2d 1166, 1169 (9th Cir. 1970) (finding a constructive denial of counsel where defendant "was forced into a trial with the assistance of a particular lawyer with whom he was dissatisfied, with whom he would not cooperate, and with whom he would not, in any manner whatsoever, communicate.").[1]

For these reasons, this Court finds Petitioner's right to choice of counsel claim to be without merit and **RECOMMENDS** that Petitioner's Petition be **DENIED** on ground one.

## II.    Self-Representation

Petitioner argues that his Sixth Amendment right to self-representation was violated when the trial court denied his request to represent himself at trial.  Pet. at 4.  In support, Petitioner notes that he was not seeking to represent himself as a delay tactic and that despite stating that he wanted proper counsel, he was consistent in wanting to represent himself.  <u>Id.</u> at 11.  Additionally, Petitioner states that he presented the trial court with "a reasonable justification" for the timing of his motion since he needed to review the records that his attorney presented to him before proceeding to trial.  <u>Id.</u> at 10-11.  Finally, Petitioner argues that the error in denying him self-representation was not harmless because he "might have benefited [sic] had he been able to control his own fate" and it is only

---

[1]Even if Petitioner contends that he was attempting to replace retained counsel with appointed counsel the Court's finding would remain unchanged.  The Sixth Amendment requires that the trial court conduct an "appropriate inquiry into the grounds for such a motion, and [ ] the matter [must] be resolved on the merits before the case goes forward."  <u>Schell v. Witek</u>, 218 F.3d 1017, 1025 (2000).  The "ultimate constitutional question" on federal habeas review is whether the state trial court's denial of the motion "actually violated [petitioner's] constitutional rights in that the conflict between [petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment."  <u>Schell</u>, 218 F. 3d at 1026 (overruling the "abuse of discretion" test described in <u>Bland v. California Dep't of Corrections</u>, 20 F.3d 1469, 1475 (9th Cir. 1994) as the correct standard of review "to examine the constitutionality of a state court's handling of a motion to substitute appointed counsel based on allegations of an irreconcilable conflict").  A petitioner will not be "entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" <u>Schell</u>, 218 F. 3d at 1022 (quoting <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993)).  Here, as described above, Petitioner did not suffer a breakdown in communication with Mr. Siddell and was not prejudiced by the trial court's decision.

speculation that "[P]etitioner would have fared worse by representing himself." Id.

Respondent contends that Petitioner's claim should be denied because it was not contrary to and did not involve an unreasonable application of the relevant Supreme Court precedent, Faretta v. California, 422 U.S. 806 (1975). Id. at 25. Additionally, Respondent notes that Petitioner's "request for self-representation was ambivalent" and therefore, did not constitute "an unequivocal request for self-representation." Id. at 27.

Petitioner raised the issue of self-representation in the petition for review he filed in the California Supreme Court, which denied the petition without citation of authority. Lodgments 6-7. The Court will therefore look through the silent denial by the state supreme court to the appellate court opinion. Ylst, 501 U.S. at 804. The court of appeal found that:

> A defendant has a constitutional right to self-representation if he or she knowingly and voluntarily waives the right to counsel. (*People v. Marshall* (1997) 15 Cal.4th 1, 20, 24.) However, the defendant must invoke the right within a reasonable time before the commencement of trial. (*People v. Marshall* (1996) 13 Cal.4th 799, 827.) Absent timely assertion of the right, the trial court has discretion to deny the request, considering such factors as the quality of counsel's representation, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay that might result. (Ibid.) "Moreover, whether timely or untimely, a request for self-representation must be unequivocal." (*People v. Doolin* (2009) 45 Cal.4th 390, 453.)
>
> As with his request to discharge retained counsel, defendant's request for self-representation was untimely. It was made on the day trial was set to start; his counsel had already examined a key prosecution witness; and the parties were ready to proceed to in limine motions, jury selection, and witness testimony. Because the request was untimely, the trial court was not required to automatically grant it. (*People v. Lynch* (2010) 50 Cal.4th 693, 722–726; *People v. Burton* (1989) 48 Cal.3d 843, 853; *People v. Howze* (2001) 85 Cal.App.4th 1380, 1397.) Further, absent reasonable cause for the late request, the court could properly exercise its discretion to deny the request because defendant was not prepared to proceed to trial, a continuance would have been necessary, and a delay on the day set for trial would have interfered with the orderly administration of justice. (See *People v. Lynch*, supra, 50 Cal.4th at p. 728; People v. Burton, supra, 48 Cal.3d at p. 852 [defendant who requests self-representation request on day preceding trial must show reasonable cause for lateness of request]; *People v. Nicholson* (1994) 24 Cal.App.4th 584, 591–593 [request for self-representation on day trial to commence, coupled with request for continuance, would justify court's denial of self-representation based on delay factor]; *People v. Ruiz* (1983) 142 Cal.App.3d 780, 789–792.) Given that defendant's request to discharge his retained counsel was untimely and unsupported by any convincing justification, the trial court could reasonably conclude there was likewise no

reasonable cause for the ensuing late self-representation request that would justify a delay in the trial.

Further, the record shows the request was not unequivocal. To protect the fundamental right to counsel, the court "must draw every inference against supposing that the defendant wishes to waive the right to counsel…. [The court must] determine whether the defendant truly desires to represent himself or herself." (*People v. Marshall, supra*, 15 Cal.4th at p. 23.) The request should be denied " 'if the defendant's statements or actions create any ambiguity as to his desire to represent himself.' " (Ibid., italics omitted.)

The record shows defendant's request for self-representation was largely, if not entirely, derived from his unsuccessful motion to discharge his retained counsel. Although a defendant may unequivocally request self-representation as an alternative to discharge of counsel (see *People v. Michaels* (2002) 28 Cal.4th 486, 524), the record shows defendant's self-representation request was ambivalent. Defendant commenced his request by stating he wanted to represent himself because he did not want his current counsel, and he repeatedly stated during the subsequent discussion with the court that what he really wanted was another lawyer. When the court asked if he still wanted to represent himself once his counsel offered to act as standby counsel (thus undermining defendant's concern that his counsel did not want to help him), defendant stated he was confused and needed more time to think. This does not constitute an unequivocal request for self-representation. *(People v. Marshall*, supra, 15 Cal.4th at p. 26.) The trial court properly denied his request for self-representation.

Lodgment 5 at 15-17.

Petitioner is not entitled to federal habeas relief on this claim. The Sixth Amendment provides that a defendant in a state court criminal proceeding has an absolute right to be represented by counsel. <u>Faretta</u>, 422 U.S. at 807. This right also implicitly guarantees the corresponding right to self-representation. <u>Id.</u> at 821, 832; <u>United States v. Erskine</u>, 355 F.3d 1161, 1167 (9th Cir. 2004). To invoke the right to self-representation, however, the defendant's waiver of counsel must be "timely, not for the purposes of delay, unequivocal, and knowing and intelligent." <u>Erskine</u>, 355 F.3d at 1167. In this case, the trial court denied Petitioner's request because, in addition to not being unequivocal, it was made the morning trial was scheduled to begin and, therefore, was untimely. Lodgment 8 at 258-267.

Although no Supreme Court decision has directly addressed the timing of a request for self-representation, the Ninth Circuit examined the issue in the context of a habeas appeal in <u>Marshall v. Taylor</u>, 395 F.3d 1058 (9th Cir. 2005). In <u>Marshall</u>, the defendant

requested to represent himself the morning his trial was to begin.  Id. at 1059.  The trial

court "expressed concern that Marshall was trying to delay trial by moving for new counsel,"

but ultimately denied his request because he "lacked the skills and understanding necessary

to represent himself."  Id.  On direct appeal, the California Court of Appeal affirmed the

court's ruling, finding that the request was untimely.  Id.  On habeas appeal, the Ninth

Circuit stated:

> Because the Supreme Court has not clearly established when a Faretta request
> is untimely, other courts are free to do so as long as their standards comport
> with the Supreme Court's holding that a request "weeks before trial" is timely.
> In Windham, the California Supreme Court held that a Faretta request must
> be made a reasonable amount of time before trial.  The California Court of
> Appeal applied the Windham rule in this case to find Marshall's request, made
> on the morning of his trial, untimely.  Because the timing of Marshall's request
> fell well inside the "weeks before trial" standard for timeliness established by
> Faretta, the court of appeal's finding of untimeliness clearly comports with
> Supreme Court precedent.

Id. at 1061 (footnotes omitted).

The facts in the instant case are very similar to those in Marshall.  On February 25,

2009, the day trial was set to begin, Petitioner first expressed his desire to represent himself

stating "I understand you denied my dismissal of him as attorney, but I would like my right

to go pro per because I don't want to go with him.  My life is on the line."  Lodgment 8 at

258.  The trial judge responded by engaging in a lengthy dialogue with Petitioner about his

request.  The trial judge stated:

> Well, you have a right to represent yourself.  I'm not going to argue with you
> on that.  But my requirement is that I advise you it is a very silly thing to do.
> I mean that with no disrespect.  All right?  I don't know how far you went in
> school.  The person who will be opposing you, the person who wants to see
> you go to prison for the rest of your life, went to high school, went to college,
> went to law school.  He passed the bar.  He's been practicing law for many,
> many years.  You don't have that.  And we're not stopping the trial.  You don't
> understand.  This trial is going.  All right?  I'm going to pick a jury tomorrow
> in this case.  That's something that you have to understand.  All right?  You've
> never picked a jury.  You don't know what it is like to pick a jury.  You don't
> know what it is like to cross-examine a witness.  Just because the law says
> you're entitled to do something doesn't mean you should do it.  It is like you
> operating on yourself; right?  Would you do it?  No.  All right.

Id. at 259.

17

Petitioner reiterated that he did not want to go forward with his retained attorney because Petitioner believed counsel would not put his best effort into the case since Petitioner unsuccessfully tried to have him discharged. Id. After Petitioner again stated that he wanted to represent himself, the trial judge asked if he was ready to start the trial today and Petitioner responded "no." Id. at 261. The trial judge told Petitioner that jury selection was starting today, that the witnesses were scheduled, and that the trial would not be continued. Id. At this time, Mr. Siddell also offered to assist Petitioner if he did proceed pro per. Id. In response, Petitioner stated that he wanted time to go through his papers before making a final decision, that he "would just like to have proper counsel that will actually help me out," and that he needed additional time to "think things through because I'm really confused." Id. at 262-266. The trial judge then denied Petitioner's motion stating:

> At this point the defendant is not ready to go. I make a finding that his request to be pro per is not timely. I think he's asking for it out of frustration. It is not an unequivocal request. Furthermore, under Ortiz, it would disrupt the orderly process of justice. And, quite frankly, by getting rid of his lawyer, Mr. Siddell, it would produce significant prejudice to the defendant. There is no question about that. So I'm going to deny it. All right.

Id. at 267.

The following day, the trial court judge readdressed the issue and stated that he denied Petitioner's motion because he did not make an unequivocal assertion of his right to represent himself "within a reasonable time for trial." Id. at 351. He also stated that the request was "done in anger and frustration" and that Petitioner was "very ambivalent about it, and it was also done for the purpose of delay or to frustrate the orderly administration of justice." Id. at 352.

The denial of Petitioner's request on the basis that it was unequivocal and untimely is a consistent application of clearly established federal law. Petitioner indicates that his request could not have been brought any earlier because it was motivated in part by his need to review the voluminous amount of records his attorney gave him just prior to trial. Pet. at 8 & 10. The trial judge had already considered this point when he denied Petitioner's

request to discharge his counsel and accepted Mr. Siddell's representation that he had reviewed the documents with Petitioner and accurately described their contents.  Lodgment 8 at 254-255.  As such, this Court cannot find that the appellate court's factual determination that Petitioner's concerns and allegations did not justify the unequivocal and untimely request was unreasonable.

For the forgoing reasons, the Court concludes that the state court's denial of Petitioner's request to represent himself was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  Consequently, this Court finds Petitioner's right to self-representation claim to be without merit and **RECOMMENDS** that Petitioner's Petition be **DENIED** on ground two.

**III.   Continuing the Trial**

Petitioner argues that his right to due process was violated by the trial court's denial of his request for a continuance on the eve of trial.  Pet. at 4.  Petitioner contends that a continuance of the trial was necessary to allow him additional "time to review the hundreds of pages of police reports counsel gave him just prior to trial."  Id. at 13.  In support, Petitioner states that he "would have been at a disadvantage" if he had to go to trial without reviewing the documents and that "there was nothing to indicate the prosecution or trial court would have been unduly inconvenienced from a short delay."  Id.  Finally, Petitioner notes that giving him the additional time could have "dispelled [P]etitioner's insecurity with [his] counsel's continued representation."  Id.

Respondent contends that Petitioner's claim was properly denied because Petitioner did not demonstrate good cause to justify a continuance.  Answer at 28.  In addition, Respondent states that Petitioner did not need additional time to review the documents because his counsel had previously reviewed the documents with him.  Id. at 29.  In further support, Respondent notes that Petitioner's "case had already been pending for one-and-a-half years when the request was made on the day the trial was set to begin" and that the trial court's "concerns about the effect [of a continuance] on the orderly administration of

1   justice" cannot be considered trivial or unreasonable.  Id.

2       Petitioner raised this claim in the petition for review he filed in the California Supreme

3   Court, which denied the petition without citation of authority.  Lodgments 6-7.  Accordingly,

4   this Court must "look through" to the state appellate court's opinion denying the claim as

5   the basis for its analysis.  Ylst, 501 U.S. at 801-06.  That court analyzed the claim as follows:

> A continuance requires a showing of good cause. (*People v. Doolin*, supra, 45 Cal.4th at p. 450.) A trial court has discretion to determine whether good cause exists; however, the court may not exercise its discretion in a manner that deprives the defendant or his attorney of a reasonable opportunity to prepare. (Ibid.) When determining whether a denial of a continuance was so arbitrary as to deny due process, the appellate court looks to the circumstances of each case and the reasons presented for the request. (Ibid.) Factors to consider include the benefit which the moving party anticipates and the likelihood such benefit will result; the burden on other witnesses, jurors and the court; and whether substantial justice will be accomplished or defeated by a granting of the motion. (Ibid.) Denial of a continuance does not warrant reversal of a conviction in the absence of a showing of abuse of discretion and prejudice to the defendant. (Ibid.)
>
> Defendant wanted more time to review the voluminous documents that he had just recently received from his attorney. However, his attorney advised the court that he had reviewed the information in the documents with defendant and defendant knew the contents of the witness statements. The record does not show that defendant needed to personally review the documents before the start of trial to ensure a fair trial. Moreover, defendant had four days between his request for time to review the documents and the commencement of witness testimony. The trial court did not abuse its discretion in denying his request for a continuance.

18  Lodgment 5 at 17-18.

19      Petitioner is not entitled to federal habeas relief on this claim. Trial judges have

20  "broad discretion" in deciding motions to continue and "[t]he denial of a continuance

21  contravenes a defendant's Sixth Amendment right to counsel only when there has been an

22  unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request

23  for delay." Trevino v. Evans, 521 F. Supp. 2d 1104, 1126 (S.D. Cal. 2007) (quoting United

24  States v. Hedgepeth, 418 F.3d 411, 423 (4th Cir. 2005)) ((quoting Morris v. Slappy, 461 U.S.

25  at 11, (1983)).  Not every denial of a request for additional time will violate due process,

26  "even if the party fails to offer evidence or is compelled to defend without counsel." Jackson

27  v. Felker, 729 F. Supp. 2d 1165, 1184 (C.D. Cal. 2010) (citing Ungar v. Sarafite, 376 U.S.

28

12cv416-H(BLM)

575, 589 (1964)).  A reviewing court decides whether a denial of a continuance is arbitrary and violates due process based on "the circumstances present in every case" and upon "the reasons presented to the trial judge at the time the request is denied."  Ungar, 376 U.S. at 589.  Habeas relief may only be granted if there is a showing of actual prejudice to a defendant resulting from the trial court's refusal to grant a continuance.  See Jackson, 729 F. Supp 2d at 1185 (citing  Gallego v. McDaniel, 124 F.3d 1065, 1072 (9th Cir. 1997)).

Here, the trial court's denial of Petitioner's request was not arbitrary.  At the time of the request, Petitioner stated that he was "very confused," wanted "more time to think about things," and that he needed to review his papers so that he was not going "into trial blind." Lodgment 8 at 262.  Petitioner further stated that he needed additional time before he could make a decision about how he wanted to proceed and that he was not ready to go. Id.  at 262-263.  In evaluating Petitioner's request, the trial judge reviewed the history of the case, specifically noting that the murder that Petitioner was charged with committing took place on October 2, 2004, and the matter was presented to the grand jury in July of 2008, had a trial call on October 24, 2008, a status on September 30, 2008, was assigned to the trial judge on December 5, 2008, had another trial call on December 9, 2008, had a conditional witness exam on December 16, 2008, was set for trial on February 17, 2009, and the trial was then continued to February 25, 2009, which was the date of Petitioner's request.  Id. at 264-265.  Additionally, the trial judge noted that jury selection was set to begin on the day that Petitioner made his request and that witnesses, including one who was in custody, were on standby.  Id. at 261.

The facts do not weigh in favor of Petitioner and do not support the conclusion that the trial court's denial of Petitioner's request was unreasoning, arbitrary or prejudicial. Petitioner waited until the day trial was set to begin, after several previous continuances, to request additional time to think and to review documents that had already been explained to him by his attorney.  Id. at 262.  A continuance would have presented a significant inconvenience to the court and the prosecution as jury selection was already set to begin,

witnesses were waiting on standby, and the courthouse had a heavy schedule of cases to be tried.  Id. at 261 & 267.  Additionally, this Court finds substantial evidence in the record for the trial court's assessment (and the appellate court's agreement) that Petitioner was not prejudiced by the denial of a continuance because he had already had the new documents explained to him by Mr. Siddell and he was going to trial with an experienced capable attorney who was "fighting hard" for and "vigorously defending" Petitioner.  Id. at 255 & 259-260.

For these reasons, this Court finds Petitioner's continuance claim to be without merit and **RECOMMENDS** that Petitioner's Petition be **DENIED** on ground three.

## IV. Challenges to the Jury Instructions

In his fourth and fifth claims, Petitioner argues that the trial court improperly instructed the jury as to both the reliability and corroboration requirements of accomplice testimony and his claim of self-defense.  Pet at 14-23.  Specifically, Petitioner asserts that the trial court erred by failing to give the entire jury instruction relating to accomplice testimony, including the portions requiring that accomplice testimony be corroborated and dictating that accomplice testimony be treated with caution.  Id. at 15.  Similarly, Petitioner argues that the trial court erred when it instructed the jury on contrived self-defense because the court failed to include a statement that the law allowed Petitioner to rely on self-defense, even if he initially provoked the victim, if the victim responded with deadly force when the Petitioner only used non-deadly force.  Id. at 17.

The majority of Petitioner's arguments focus on his claim that the challenged jury instructions do not comport with California state law.  Id. at 14-23.  To the extent Petitioner is arguing that the trial court violated California state law by the giving the challenged jury instructions, Petitioner's claims are not cognizable in federal habeas proceedings.  Estelle v. McGuire, 502 U.S. 62, 68 (1991) (stating that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state

law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Accordingly, the Court **RECOMMENDS** that Petitioner's claims be **DENIED** to the extent that they are premised on an allegation that the challenged jury instructions violate state law. To the extent that Petitioner is arguing that the challenged jury instructions violate federal constitutional law, the Court will consider them.

### A.    Accomplice Testimony

Petitioner argues that his constitutional due process rights were violated because the court did not advise the jury that accomplice testimony must be corroborated and treated with caution. Pet. at 15. Petitioner explains that California law prohibits a person from being convicted of a crime based solely on accomplice testimony by requiring accomplice testimony to be corroborated. Id. Petitioner states that California law also requires the trial court to instruct the jury that accomplice testimony must be viewed with caution. Id. Petitioner argues that the trial court's failure to properly instruct the jury on those two issues allowed the "jury to convict him based on improperly corroborated accomplice testimony." Id. at 16.

Respondent contends that Petitioner's argument fails to state a federal claim because it is based solely upon state law. Answer at 29. However, Respondent also asserts that the instructions do not violate federal constitutional law. Id. at 34.

The California Supreme Court denied this claim in the petition for review without citation to authority (lodgment 7) so this Court must "look through" to the state appellate court's opinion for analysis of the claim. Ylst, 501 U.S. at 801-06. The appellate court denied Petitioner's claim. Lodgment 5 at 19-24. Initially, the court found that the trial court had properly instructed the jury that they could not convict based on accomplice testimony unless there is corroborating evidence, but had not properly instructed the jury regarding the fact that they had to view the accomplice testimony with caution. Id. at 19. However, the court found that in light of all of the jury instructions and the entire record, "[t]here is

23

no reasonable probability the jury's verdict was affected by the court's failure to explicitly tell the jury to view the accomplice testimony with caution." Id. at 22. The Court also determined that "[r]easonable jurors would have understood that the corroboration requirement would not be satisfied by considering the testimony of one accomplice to corroborate the other accomplice." Id. at 23. Finally, the court also found that there was substantial corroboration connecting Petitioner to the charged crime and supporting the accomplice testimony.[2] Id. at 23-24. In performing its analysis, the court relied entirely on California state law. Id. at 18-23. Because the appellate court did not consider the appropriate federal constitutional law, this Court is required to perform a de novo review. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002) ("when it is clear that a state court has not reached the merits of a properly raised issue, we must review it de novo").

In contrast to California law, federal law provides that "uncorroborated testimony of an accomplice is sufficient to sustain a conviction unless it is incredible or insubstantial on its face." United States v. Necochea, 986 F.2d 1273, 1282 (9th Cir. 1993). As a result, a

---

[2]Petitioner also argued in his direct appeals and in his federal habeas petition that his counsel was constitutionally ineffective because he did not request the portion of the jury accomplice instruction that states that one accomplice cannot provide the corroboration for another accomplice. Pet. at 13-15. To prevail on a claim of ineffective assistance of trial counsel, Petitioner must establish that counsel's deficient performance prejudiced the defense, such that the result of the proceeding would have been different absent counsel's errors. Strickland v. Washington, 466 U.S. 668, 687 (1984). The state appellate courts rejected this argument, finding that even if it was an error not to request the instruction, Petitioner was not prejudiced by the error. Lodgment 18 at 21-23; Lodgment 7.

While stated in different portions of the instructions, the entire instructions advised the jury that Hernandez and Jimenez were accomplices and that the jurors could not convict Petitioner based only on the testimony of Jimenez and Hernandez. The jury also was instructed about the factors they could consider in evaluating witness testimony, including bias, personal interest, whether the person had deliberately lied about the case, and whether the person had been promised leniency. Moreover, defense counsel vigorously cross-examined each accomplice and argued during his closing that both were unreliable because they had received deals from the police, minimized their involvement in the crime, and had previously lied to the police. Lodgment 8 at 918-923, 1125-27, 1035-36. Additionally, non-accomplice witnesses, including Martinez, Anaya, and Luna, provided corroborating testimony connecting Petitioner with the crime. Id. at 519-531, 544-580, 738-791. Petitioner merely speculates that additional instruction would have resulted in a different verdict. This is insufficient to establish prejudice.

Because there is substantial evidence supporting the state court's conclusion that Petitioner was not prejudiced by the presumed deficient conduct of failing to request the identified jury instruction and because the conclusion is neither contrary to nor an unreasonable application of clearly established Supreme Court law, this Court **RECOMMENDS** that Petitioner's ineffective assistance of counsel claim be **DENIED**.

trial court's failure to comply with California's heightened requirements regarding accomplice testimony does not constitute a viable federal right in a habeas proceeding unless the accomplice testimony is facially incredible or insubstantial. Id.; Berryman v. Hedgpeth, 2011 WL 3235640, *10 (S.D. Cal. Mar. 1, 2011); George v. Almager, 674 F.Supp.2d 1160, 1175 (S.D. Cal. 2009).

Here, two accomplices, Genri Hernandez and Abel Jimenez, testified at Petitioner's trial. Both of them testified that they are VDK gang members, as is Petitioner, and that they, Petitioner, and other VDK gang members and associates went to Milbrae Street to purchase marijuana. Lodgment 8 at 813, 1016. While waiting for the marijuana, Rogelio Valadez, a VDK gang member, began "tagging" graffiti by writing "VDK First" on a fire hydrant. Id. at 820-21. At some point, a car containing the victim and another man arrived at the location and a fight broke out between Petitioner, Valadez, and the victim. Id. at 822-24, 1018. Neither Hernandez nor Jimenez saw exactly how the fight began. Id. at 792-930, 1007-60. Jimenez testified that Valadez knocked on the car window and announced that there was a fight down the street. Id. at 822. Jimenez stated that he and Hernandez grabbed bats out of the car trunk and all three of them ran toward the fight. Id. at 822-826. As they approached the area where the fight had occurred, Jimenez saw Petitioner running toward them and another man running away from them. Id. at 826-27. Jimenez said that when Petitioner saw them, Petitioner turned around and all four men chased the man who was running away from them. Id. When Petitioner and his fellow gang members caught the man, Jimenez hit the man with a bat and he fell to the ground. Id. at 828. While the victim was on the ground, Petitioner took the bat from Jimenez and began hitting the victim on his upper body with the bat. Id. at 828-830. Meanwhile, the other gang members were kicking the victim. Id. at 831. Jimenez testified that he returned to the car and was surprised to see Martinez in the car because all gang members and associates, including Martinez, should have been helping with the fight. Id. at 832. Jimenez testified that gang members are supposed to help fellow gang members when one of them gets in a fight and

12cv416-H(BLM)

that the failure to do so could result in the non-participating gang member being beaten by other gang members.  Id. at 822-23.

Hernandez testified that as he ran toward the fight, he saw Petitioner and Valadez fighting with the victim.  Id. at 1020.  Hernandez said that Petitioner was hitting the victim with his fists while the victim was on the ground.  Id. at 1021.  Hernandez chased another man so he was unable to see precisely what Petitioner and other participants were doing but he did see Valadez kicking and punching the victim.  Id. at 1020, 1024.  Hernandez testified that they left the scene in two cars.  Id. at 1026-27.  Hernandez testified that after the fight, Petitioner admitted he hit the victim, including with a bat, and warned the other participants and gang members not to talk about what happened or something bad would happen to them.  Id. at 1028-30.

Neither accomplice's testimony is incredible or insubstantial.   In addition, there was substantial evidence, including non-accomplice testimony, expert testimony, and non-testimonial evidence that supported the credibility and substance of the accomplices' testimony. Lodgment 5 at 519-531, 765-772, 931-1007.  Moreover, the state appellate court found that there was corroborating evidence supporting the accomplices' testimony and that the jury was adequately advised that they needed to view the accomplice testimony with caution. Lodgment 5 at 20-24.  Those findings are neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  Accordingly, this Court finds this claim to be without merit and **RECOMMENDS** that Petitioner's Petition be **DENIED** on ground four.

### B.      Self-Defense

Petitioner argues that his constitutional right to due process was violated by the self-defense jury instructions because the instructions did not make it clear to the jury that Petitioner could rely on self-defense even if he was the initial aggressor if the victim responded with a higher level of force (deadly force) than Petitioner had used (non-deadly force).  Pet. at 17.  Petitioner stated that this instructional error unconstitutionally relieved

1  the government of its burden of proving beyond a reasonable doubt every element of the

2  crime of conviction.  Id.

3       Respondent asserts that Petitioner's claim is not cognizable because it is premised on

4  state law.  Answer at 39.  Alternatively, Respondent interprets Petitioner's claim as stating

5  that the alleged instructional failure prevented Petitioner from presenting his theory of

6  defense.  Id.  Respondent argues that while the trial court did not instruct the jury in the

7  precise manner Petitioner requested, the jury was instructed that they could consider a self-

8  defense argument in the factual circumstances alleged by Petitioner.  Id. at 39-40.

9  Respondent also asserts that the "prosecutor's burden of proof on the murder was not

10  lessened."  Id. at 40.

11       Petitioner raised this claim in the petition for review he filed in the California Supreme

12  Court, which denied the petition without citation of authority.  Lodgments 6-7.  Accordingly,

13  this Court must "look through" to the state appellate court's opinion denying the claim as

14  the basis for its analysis.  Ylst, 501 U.S. at 801-06.  That court denied Petitioner's claim,

15  finding that there was no instructional error.  Lodgment 5 at 23-27.  Initially, the court

16  recounted that the trial court gave two related jury instructions: self-defense (CALCRIM

17  3471) and contrived self-defense (CALCRIM 3472).  Id. at 24.  Considering the instructions

18  together, the court explained that:

19       The contrived self-defense instruction set forth in CALCRIM No. 3472 properly
instructs the jury to evaluate the defendant's intent to determine whether the
20  claim of self-defense was legitimate or engineered, and informs the jury that
self-defense is unavailable in the latter situation. The instruction does not
21  preclude a finding, based on CALCRIM No. 3471, of legitimate self-defense in
response to the victim's excessive reaction to a minor confrontation, as long
22  as the defendant did not intend to elicit the excessive reaction to concoct an
excuse for further force by the defendant. Stated simply, the instructions
23  inform the jury that the defendant can claim self-defense in various
circumstances, but the defendant cannot claim *contrived* self-defense.

24

25  Id. at 26 (italics in original).

26       To establish a federal constitutional claim based on missing or incorrect jury

27  instructions, Petitioner bears an "especially heavy" burden and must show that the jury

28                              12cv416-H(BLM)

instruction error "so infected the entire trial that the resulting conviction violated due process." Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973) and Hendricks v. Vasquez, 974 F.2d 1099, 1106 (9th Cir. 1992)); see also Estelle, 502 U.S. at 72. "This standard for instructional error applies to ambiguous or omitted instructions." Murtishaw v. Woodford, 255 F.3d 926, 971 (9th Cir. 2001). The instruction may not be judged in artificial isolation, rather, it must be considered in the context of the instructions as a whole and the entire trial record (including the arguments of counsel). See Oquendo v. Jacquez, 2011 WL 3205351 at *6 (C.D. Cal. May 9, 2011) (citing Estelle, 502 U.S. at 72). When reviewing an allegedly ambiguous instruction, courts are required to inquire "whether there is a reasonable likelihood the jury has applied the challenged instruction in a way" that violates the Constitution. Boyde v. California, 494 U.S. 370, 380 (1990); Calderon v. Coleman, 525 U.S. 141, 146 (1998) (same). Finally, even if the challenged instruction is found to have violated a petitioner's constitutional right, a habeas petitioner is not entitled to relief unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." Oquendo, 2011 WL 3205351 at *6 (citing Brecht, 507 U.S. at 637–38).

When considering the self-defense instructions given to the jury in the context of Petitioner's entire trial, the record supports the California Court of Appeal's conclusion that the trial court did not err by not further instructing the jury in accordance with Petitioner's request. The jury was instructed on Cal. Criminal Jury Instruction 3471 Right to Self-Defense: Mutual Combat or Initial Aggressor and Cal. Criminal Jury Instruction 3472 Right to Self-Defense: May Not Be Contrived. Lodgment 8 at 1172-1173. Because the jury was provided with accurate versions of the necessary self-defense instructions, Petitioner fails to show that his trial was infected such that his resulting conviction violated due process. Clark, 450 F.3d at 904. As the appellate court correctly noted, the language of instruction 3472 regarding contrived self-defense, did "not preclude a finding, based on

CALCRIM No. 3471, of legitimate self-defense in response to the victim's excessive reaction to a minor confrontation." Lodgment 5 at 26. Therefore, Petitioner's contention that the availability of self-defense in his case should have been emphasized for the jury or that the instructions were not clear enough as given is unsupported and does not establish legal error. Nor does it demonstrate a reasonable likelihood that the jury, which received accurate instructions, applied those instructions incorrectly. This is especially true considering the instructions in the context of the entire record which shows that the victim, Rosales, was unarmed and outnumbered and that Petitioner had a baseball bat and did not sustain any serious or life threatening injuries as a result of the confrontation.

Furthermore, a thorough review of the record reveals that even if the self-defense jury instructions were incomplete and given in error, they did not have a substantial and injurious effect or influence in determining the jury's verdict. It also confirms that the appellate court's decision was not contrary to nor an unreasonable application of clearly established Supreme Court law. Accordingly, this Court **RECOMMENDS** that Petitioner's fourth claim for habeas relief be **DENIED**.

**V. Sufficiency of Evidence for Gang Enhancement**

Petitioner argues his constitutional rights were violated because there was insufficient evidence to support the jury's finding that the crime was committed to benefit a criminal street gang pursuant to Penal Code § 186.22(b)(1).[3] Pet. at 24. Petitioner states that "generalized testimony of a non-percipient expert witness based on his or her gang experience in unrelated incidents is inadequate." Id. at 25. Petitioner argues there is insufficient evidence that he intended to benefit a criminal street gang during the altercation because the victim was not a member of the gang associated with the turf Petitioner

---

[3]The trial court found the gang enhancement issue to be moot and struck the enhancement. Lodgment 8 at 1408. The Court of Appeal modified the trial court's judgment to reflect its finding that the gang enhancement was not moot and not stricken and considered the merits of petitioner's claim that the evidence did not support the finding of the gang enhancement. Lodgment 6 at 32.

entered, there was no evidence of a gang related motive, and his main purpose was to purchase marijuana.  Id.

Respondent contends that Petitioner's claim lacks merit because the state court's determination of the matter was reasonable and entitled to deference.  Answer at 44-46. Respondent argues that sufficiency of the evidence claims under California law use the same standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), that relief may only be granted if "…no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Answer at 44.  Respondent asserts that although California law permits a true finding based solely on the testimony of a gang expert, in this case, there was additional evidence, including eyewitness testimony, supporting the verdict.  Id. at 44-46.  Respondent concludes that there was substantial evidence supporting the jury's finding and that reasonable jurists could agree on the finding and that, therefore, the appellate court's decision was not "contrary to, nor an unreasonable application of United States Supreme Court precedent."  Id. at 45-46.

Petitioner raised this claim in the petition for review he filed in the California Supreme Court, which denied the petition without citation of authority.  Lodgments 6-7.  Accordingly, this Court must "look through" to the state appellate court's opinion denying the claim as the basis for its analysis.  Ylst, 501 U.S. at 801-06.  That court analyzed the claim as follows:

> To establish the gang enhancement, the prosecution must prove the crime was "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members …." (§ 186.22, subd. (b)(1).) These elements require that the crime and the defendant's specific intent be "gang related ." (*People v. Gardeley* (1996) 14 Cal.4th 605, 624–625, fns. 10, 12; *People v. Mendez* (2010) 188 Cal.App.4th 47, 56; *People v. Ramon* (2009) 175 Cal.App.4th 843, 849; *In re Frank S.* (2006) 141 Cal.App.4th 1192, 1199.)

> A defendant's mere membership in a gang does not suffice to establish the gang enhancement. (*People v. Gardeley*, supra, 14 Cal.4th at p. 623; *In re Frank S.*, supra, 141 Cal.App.4th at p. 1199; *People v. Ochoa* (2009) 179 Cal.App.4th 650, 663.) Rather, " '[t]he crime itself must have some connection with the activities of a gang….' " (*In re Frank S.*, supra, 141 Cal.App.4th at p. 1199.) Although the defendant's commission of a crime with a fellow gang

member does not necessarily show a gang motivation (see *People v. Ramon*, supra, 175 Cal.App.4th at pp. 851–853), this can be a significant factor contributing to an inference that the crime was gang-related (see *People v. Mendez*, supra, 188 Cal.App .4th at p. 57; *People v. Vazquez* (2009) 178 Cal.App.4th 347, 353–355; *People v. Villalobos* (2006) 145 Cal.App.4th 310, 322).

On appeal, we review the entire record to determine if there is substantial evidence from which a reasonable jury could find the gang enhancement true beyond a reasonable doubt. (*People v. Ochoa*, supra, 179 Cal.App.4th at pp. 656–657.) We draw all reasonable inferences in favor of the jury's verdict, and affirm if the circumstances reasonably justify the jury's finding even if the circumstances can also support a contrary finding. (*Id.* at p. 657.)

Drawing all inferences in favor of the verdict, the record supports the gang enhancement finding. For unknown reasons, defendant got into a fight with the victim. No weapons were observed during the initial stages of the fight. The fight quickly escalated to a point where four VDK gang members, including defendant, were involved and the victim was beaten to death. The testimony of Hernandez, Jimenez, and Martinez reflected that in the gang culture, it was expected that all gang members and associates would join an altercation whenever another gang member was in a fight. When defendant's fellow gang members realized that defendant was in a fight, they armed themselves with bats and went to his assistance. Because of this gang support, a weaponless fight that started out between the defendant, the victim and one or two other persons, expanded to include additional gang members and weapons.

The jury could reasonably conclude the reason the fight reached such a high level of violence was because a gang was involved. The jury could deduce that because defendant was a gang member, he shared the expectation that his fellow gang members would join him in the fight. Further, because defendant continued to pursue and then beat the victim when joined by his gang cohorts, the jury could infer that he intended their participation to benefit the gang by showing that a fight with one gang member would trigger an onslaught from other gang members.

The jury's gang enhancement finding is not defeated by the facts that the fight occurred in a neighborhood claimed by a gang unrelated to the victim and defendant, and that there was no showing defendant was aware of any overt gang-related language or signs exhibited at the time of the fight (such as Jimenez's graffiti). The jury could infer defendant intended the victim (had he survived) and any other persons aware of the fight (such as Anaya) to know that the joining of additional persons in the fight reflected that a gang was involved in the fight, and should anyone cooperate with the authorities to identify the assailants, the gang would not hesitate to call on its members to use violence in response. The jury could conclude that the instilling of fear arising from the escalation of the fight was designed to benefit the gang by furthering the dominance and control of gangs in the community in general.

There is substantial evidence to support the gang enhancement finding.

Lodgment 5 at 28-30.

The clearly established federal law regarding sufficiency of the evidence claims in the criminal context is set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  Jackson claims face a high bar in federal habeas proceedings.  Coleman v. Johnson, 132 S.Ct. 2060, 62 (2012).  In Jackson, the Court held that the Fourteenth Amendment's Due Process Clause is violated, and an applicant is entitled to habeas corpus relief, "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324.  In making this determination, habeas courts must respect "the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict." Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).  "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." United States v. Cordova Barajas, 360 F.3d 1037, 1041 (9th Cir. 2004) (citing United States v. Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir.1992)).  "Although it might have been possible to draw a different inference from the evidence, [a federal habeas court is] required to resolve that conflict in favor of the prosecution." Ngo v. Giurbino, 651 F.3d 1112, 1114-15 (9th Cir. 2011); see also Coleman,132 S.Ct. at 2062. (stating that "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'") (quoting Cavazos v. Smith, 132 S.Ct. 2, 4 (2011) (per curiam)); and Jackson, 443 U.S. at 326 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution").  Federal habeas courts also must analyze Jackson claims "with explicit reference to the substantive elements of the criminal offense

as defined by state law." <u>Chein v. Shumsky</u>, 373 F.3d 978, 983 (9th Cir. 2004) (en banc) (quoting <u>Jackson</u>, 443 U.S. at 324 n.16).  When assessing the evidence presented at trial, a reviewing court must conduct a thorough review of the state court record.  <u>Jones v. Wood</u>, 114 F.3d 1002, 1013 (9th Cir. 1997).

The Ninth Circuit has made clear that "[a]n additional layer of deference is added to this standard by 28 U.S.C. § 2254(d), which obliges [Petitioner] to demonstrate that the state court's adjudication entailed an unreasonable application of the quoted <u>Jackson</u> standard." <u>Briceno v. Scribner</u>, 555 F.3d 1069, 1078 (9th Cir. 2009) (citing <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005)).  In <u>Allen</u>, the Ninth Circuit first reviewed the standard of review applied by the state appellate court to a sufficiency of the evidence claim, and found that although the state court did not cite to the relevant federal case law, "such a citation is not required 'so long as neither the reasoning nor the result of the state-court decision contradicts' Supreme Court precedent."  <u>Id</u>. at 1274 n.12, quoting <u>Early v. Packer</u>, 537 U.S. 3, 8 (2003).  Accordingly, it falls to this Court to determine whether the state appellate court opinion here "reflected an unreasonable application of <u>Jackson</u> . . . to the facts of this case."  <u>Juan H.</u>, 408 F.3d at 1275.

As the appellate court correctly stated, "to establish a gang enhancement, the prosecution had to prove that the crime was committed for the benefit of, at the direction of, or in association with any criminal street gang and with the specific intent to promote, further, or assist in any criminal conduct by gang members…" Lodgment 5 at 29 (citing Pen. Code § 186.22 (b)(1)).  Petitioner claims that the testimony of an expert witness who was not present during the commission of the offense is insufficient evidence to prove either element of the gang enhancement.

Here, an expert on street gangs testified that VDK is a gang that he first documented in 2000 and that Petitioner was one of the original members of the VDK gang.  Lodgment 8 at 936 and 942.  The expert also testified that if a fight breaks out involving members of

33

1   a gang, other gang members who are present are expected to get involved in the fight and

2   protect their fellow gang members, act as lookouts, drive the getaway car, and do whatever

3   else may be necessary to assist.  Id. at 952-953.  In addition, several of Petitioner's fellow

4   gang members testified about gang membership and the gang culture.  Id. at 738-917;

5   1013-1057.  Specifically, they testified that Petitioner committed the charged felony with

6   known members of VDK, a criminal street gang.  Id. at 961-63.  Hernandez, Jimenez, and

7   Martinez explained that in the gang culture, all gang members are expected to participate

8   in a fight when another gang member is involved.  Id. at 822-23, 920, 1055. Martinez

9   testified that he was upset and regretful for staying in the car after being hit through the

10   window because he felt that as a member of the gang he was supposed to participate in the

11   fight.  Id. at 771-72.  Martinez also testified that he could not identify who hit him, but

12   thought it was "gang related."  Id. at 783.  Therefore, Petitioner's claim that the only

13   evidence relating to whether Petitioner's actions benefitted a criminal street gang came from

14   the expert who testified that the crime benefitted the gang by increasing their status in the

15   surrounding area is incorrect and there was substantial evidence supporting the jury's

16   determination that the crime "was committed for the benefit of, at the direction of, or in

17   association with any criminal street gang."  Id. at 963; Pet at 25; see also Cordova Barajas,

18   360 F.3d at 1041;  United States v. Yoshida, 303 F.3d 1145, 1151 (9th Cir. 2002)

19   ("[C]ircumstantial evidence can form a sufficient basis for conviction."); United States v.

20   Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir. 1992) ("[C]ircumstantial evidence and

21   inferences drawn from it may be sufficient to sustain a conviction.").

22        After the appellate court decided this case, the California Supreme Court clarified the

23   specific intent element of the gang enhancement offense in People v. Albillar, 51 Cal. 4th 47,

24   68 (2010).  The California Supreme Court concluded "if substantial evidence establishes that

25   the defendant intended to and did commit the charged felony with known members of a

26   gang, the jury may fairly infer that the defendant had the specific intent to promote, further,

27

28                               34

or assist criminal conduct by those gang members." Id.  Habeas courts look to see if a reasonable jury could find that Petitioner "acted with the 'specific intent to promote, further, or assist in' *some* type of '*criminal conduct* by gang members,' which may include the crimes of conviction." Emery v. Clark, 643 F.3d. 1210, 1216 (9th Cir. 2010) (quoting Albillar 51 Cal. 4th at 68) (Italics added).[4]  The criminal conduct does not have to be apart from the offense sought to be enhanced.  Emery, 643 F.2d at 1215 (quoting Albillar, 51 Cal. 4th at 65-66); see also Hernandez v. Gonzalez, 2011 WL 7074331 (C.D. Cal Nov. 30, 2011) (holding that committing a crime with a group of gang members is sufficient under Albillar and Emery).

Applying the Albillar standard to the instant case shows that there was substantial evidence supporting the jury's determination.  Initially, all of the gang members testified that Petitioner intentionally committed this crime with other gang members.  Lodgment 8 at 764-780, 825-832, 901-917, 1020-1033.  Jimenez explained that Petitioner was running away from the fight when he saw his fellow gang members running towards him.  Id. at 826-827. Upon seeing them, Petitioner turned around and all three gang members chased, and then beat the victim.  Id.  In addition, the jury heard testimony that the fight escalated from a fist-fight between two men into a fight involving four VDK gang members using bats.  Id. at 517-20.  Petitioner assisted other gang members in beating Rosales by taking the bat from Jimenez, simultaneously punching and kicking Rosales with Valadez, and meeting up at a rendevous point where he wiped down the car to eliminate possible fingerprints.  Id. at 780, 828-29, 1019-20, 1027-28. Petitioner also threatened other gang members to refrain from talking to authorities.  Id. at 913-14, 1027-28.  Finally, the expert testified that gang members are expected to join in and assist when a fellow gang member gets involved in an altercation. Id. at 952-953.  As such, there was substantial evidence supporting the jury's determination that Petitioner committed this crime with the "specific intent to promote,

---

[4]In Emery, 643 F. 3d 1210, the Ninth Circuit applied the Albillar standard retroactively to evaluate the sufficiency of a true finding prior to the Albillar decision.

12cv416-H(BLM)

further, or assist in any criminal conduct by gang members."

After reviewing the trial record, this court finds there was substantial evidence supporting the gang enhancement true finding and that the jury's determination was not unreasonable. Accordingly, the state court's analysis and decision denying the sufficiency of evidence claim was not "contrary to or an unreasonable application of Federal law." 28 U.S.C. § 2254(d)(1). For these reasons, this Court finds Petitioner's sufficiency of the evidence claim to be without merit and **RECOMMENDS** that Petitioner's Petition be **DENIED** on ground six.

### CONCLUSION AND RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition.

**IT IS ORDERED** that no later than **November 16, 2012**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **December 7, 2012**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9 th Cir. 1998).

**IT IS SO ORDERED.**

DATED: October 19, 2012

BARBARA L. MAJOR
United States Magistrate Judge

12cv416-H(BLM)